IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GUY F. ZERN, III                    :      CIVIL ACTION
                                    :
                                    :
            v.                      :
                                    :
PENNONI ASSOCIATES, INC.            :      NO. 11-1992


MEMORANDUM

McLaughlin, J.                                  March 2, 2012

        This lawsuit arises from the termination of Guy Zern's

employment as a Lab Inspector for defendant Pennoni Associates,

Inc. ("Pennoni").  Following his termination in April 2008, Mr.

Zern filed a complaint against his former employer, asserting

violations of the Americans with Disabilities Act ("ADA") and the

Pennsylvania Human Relations Act ("PHRA").[1]  Mr. Zern claimed

perceived disability discrimination and unlawful retaliation in

violation of the ADA.

        The defendant, Pennoni, now moves for summary judgment

under Rule 56 of the Federal Rules of Civil Procedure.  The Court

will grant the defendant's motion.

_____

        [1] Mr. Zern originally filed claims under the Age
Discrimination in Employment Act ("ADEA") as well, but he
voluntarily withdrew those claims as well as his age
discrimination PHRA claim in his opposition to summary judgment.
Opp. to MSJ 1.

I.    Factual Background[2]

        Pennoni is an engineering and design consulting firm
that provides services for governmental entities and private
commercial, industrial, and construction firms.  Its headquarters
is in Philadelphia, Pennsylvania, and it has a regional office in
Bethlehem, Pennsylvania.  MSJ, Ex. A ("Sander Aff.") ¶ 4.

        The plaintiff, Guy Zern, worked for Pennoni for
approximately ten years, from March 1998 to April 2008, as a Lab
Inspector in the cement lab at Pennoni's Bethlehem facility.  He
worked with the lab's chemist, Juan Fernandez, and was supervised
by Charles Snyder, a Staff Engineer with Type II Diabetes.  Mr.
Zern handled the physical testing, while Mr. Fernandez was
responsible for chemical testing.  MSJ, Ex. B ("Zern Dep.") 18,
237; MSJ, Ex. C ("Snyder Aff.") ¶¶ 4, 6, 10.


    A.    Mr. Zern's Performance Evaluations

        After Pennoni's lab chemist, Juan Fernandez, retired on
December 22, 2005, Mr. Zern was expected to learn chemical
testing in the lab.  Snyder Aff. ¶ 10.  Over the course of the

---

        [2] Facts here are undisputed unless otherwise noted.
Disputed facts are read in a light most favorable to the
plaintiff, the nonmoving party.  The Court notes that the
plaintiff's opposition did not contain a recitation of facts or
otherwise respond to the defendant's statement of undisputed
facts.

next three staff performance review periods, Mr. Zern's supervisors expressed their concerns about his work.

Mr. Zern's 2005 Staff Performance Evaluation indicated an overall rating of "Good."  However, Mr. Zern's supervisor, Charles Snyder, noted that Mr. Zern needed improvement in six areas: work quality, organization/planning skills, time management, communication/cooperation, decision making, and profitability.  Mr. Snyder commented that Mr. Zern's "[t]iming is not always ideal - particularly with more detailed assignments," that his more complex projects "tend to drag," and that "[c]ustomers are concerned with speed as well as accuracy."  The evaluation also shows that Mr. Zern did not meet expectations in three additional performance goal categories, including becoming proficient in chemical testing.  Snyder Aff. Ex. 1.

Mr. Zern's 2006 Staff Performance Evaluation was similar in substance to the 2005 evaluation.  Mr. Snyder noted that Mr. Zern needed improvement in the same six areas as in 2005, in addition to initiative/problem solving.  Mr. Snyder again commented on the fact that "timeliness is a concern" and that Mr. Zern's complex assignments "tend to drag."  Mr. Snyder noted that Mr. Zern appeared "reluctant to tackle more complicated tests" and needed to learn additional tests to fill in when others in the lab are overloaded.  In addition, Mr. Zern

did not meet expectations with respect to three additional performance goals, some relating to testing.  Snyder Aff. Ex. 2.

The following year, Edward Sander, then Division Manager for the Bethlehem facility and Mr. Snyder's supervisor, drafted Mr. Zern's performance evaluation himself because he did not see improvement in Mr. Zern's performance over time.  Sander Aff. ¶¶ 5, 7.  Mr. Zern's 2007 Staff Performance Evaluation reflected a "needs improvement" mark in every category of performance, and rated "does not meet expectations" in nearly all of his performance goals for the review period.  His overall rating declined to "needs improvement."  Sander Aff. Ex. 1.

Mr. Sander, like Mr. Snyder in years past, commented on Mr. Zern's issues with timeliness and failure to meet deadlines. In particular, Mr. Sander wrote that Mr. Zern's "[o]verall productivity does not meet minimum acceptable levels."  Id.

Mr. Zern admitted that his supervisor, Mr. Snyder, took a project away from him because he did not complete it on time. Zern Dep. 110.

B.    Cement Lab Profitability & Mr. Zern's Termination

Mr. Zern's 2007 evaluation included a comment that the "[c]hemical lab was not profitable."  Sander Aff. Ex. 1.  Mr. Zern admitted that the lack of profitability in the cement lab was "a yearly thing [Pennoni was] saying . . . . We weren't

4

making money, weren't making money."  Zern Dep. 174; see also id.
at 146, 224.

On January 14, 2008, Quinton Davis took Edward Sander's
position and became the Division Manager of Pennoni's Bethlehem
facility.  Both Mr. Zern and Mr. Snyder began reporting directly
to Mr. Davis.  MSJ, Ex. D ("Davis Aff.") ¶¶ 3, 5.

It became apparent to Mr. Davis that the cement lab was
suffering the greatest financial losses of the Bethlehem
facility.  In early 2008, Mr. Davis decided to out-source the
chemical testing function of the cement lab to an outside
company, but continue the physical testing in-house.  Mr. Davis
decided to eliminate Mr. Zern's position.  Mr. Zern was
terminated from Pennoni on April 1, 2008.  Id. ¶¶ 6, 7; Snyder
Aff. ¶ 18.

Pennoni told Mr. Zern that he was being terminated for
poor performance and lack of work.  Davis Aff. ¶ 7; Zern Dep.
238.  Mr. Zern acknowledged that it was "obvious" what the given
reasons for his termination meant: "Well, job performance because
of my reviews, so I kind of figured that, that that's why.  And
then lack of work, which is something that they were always
saying, I didn't have enough work."  Id.

C.    Mr. Zern's Diabetes

Mr. Zern suffers from Type I Diabetes, a fact which he informed Pennoni management about when he was first hired in 1998.  Zern Dep. 48, 266.  Mr. Zern's supervisor, Mr. Snyder, is also a diabetic.  Mr. Zern and Mr. Snyder had numerous discussions over the years about disease management.  Snyder Aff. ¶¶ 4, 8; Zern Dep. 272-73.  Mr. Zern admitted that no one at Pennoni made negative comments to him about his diabetes, and that Pennoni never prohibited him from checking his blood sugars or eating and resting when necessary.  Zern Dep. 270-71; 316-17.

Mr. Zern may have informed Nelson Shaffer, then Executive Vice President at Pennoni, of his diabetes during a meeting he had with Mr. Shaffer on March 12, 2008, two weeks before Mr. Zern's termination.  Mr. Zern presented conflicting deposition testimony on this factual issue.  First, he testified that he "might have mentioned" diabetes during the meeting, but later, he admitted that he had no independent recollection of discussing his diabetes with Mr. Shaffer.  Zern Dep. 272.  Mr. Zern also testified inconsistently regarding whether he gave Mr. Shaffer a copy of an email addressed to himself, dated March 12, 2008, in which he wrote: "I am working with a major disability, Type 1 Diabetes and have managed to not let it hurt my work." Opp. to MSJ, Appendix, at 9.  First, Mr. Zern testified that he believed he sent the email to Mr. Shaffer.  Then he admitted, "I

don't know if I actually sent him a copy of this or not.  I don't recall."  Then he testified that he thought he gave Mr. Shaffer a copy.  Zern Dep. 233.  Finally, in opposition to summary judgment, Mr. Zern submitted an affidavit attesting that he did, in fact, give Mr. Shaffer a copy of the email at the meeting.  Zern Aff. ¶¶ 10-11.  The Court finds that Mr. Zern's statements are not so blatantly contradictory as to merit deviation from the usual requirement on summary judgment that all reasonable inferences should be drawn in the nonmoving party's favor.

However, it is undisputed that Mr. Davis, the new Division Manager who terminated Mr. Zern's position, was not aware that Mr. Zern had diabetes until after Mr. Zern was terminated.  Davis Aff. ¶ 8.

D.  Mr. Zern's Successful Application for Social Security
    Disability Benefits

After Mr. Zern's termination from Pennoni, he applied for social security disability benefits.  An administrative law judge ("ALJ") found that Mr. Zern was disabled beginning on April 1, 2008, his last day at Pennoni.  Zern Dep. Exh. 26 at 1, 6.  The ALJ ruled that:

> The claimant has past relevant work as a lab tech/chemist
> [at Pennoni].  This job was of medium in exertion and
> skilled in nature.  The demands of the claimant's past
> relevant work exceed the above-defined functional capacity.
> Accordingly, the undersigned Administrative Law Judge finds
> the claimant is unable to perform his past relevant work as
> a lab tech/chemist.

Id. at 5.


II.   Analysis

   A.   Legal Standard

      Summary judgment is appropriate if there is "no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving
party bears the initial burden of informing the court of the
basis for its motion.  Celotex Corp. v. Catrett, 477 U.S. 317,
323 (1986).  The party may meet that burden by showing that the
party who bears the burden of proof lacks sufficient evidence to
support his case.  See id.  Once a party files a properly
supported motion for summary judgment, the burden shifts to the
nonmoving party, who must set forth specific facts showing that
there is a genuine issue of material fact for trial.  Anderson v.
Liberty v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

      A fact is "material" if it might affect the outcome of
the suit under the governing law.  Id. at 248.  A dispute is
genuine if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party.  Id.  The court must
view the facts in the light most favorable to the nonmoving
party.  See Sheridan v. NGK Metals Corp., 609 F.3d 239, 251 n.12
(3d Cir. 2010).

8

B.   Legal Framework

The Third Circuit analyzes both ADA disparate treatment and retaliation claims under the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  See Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000).  Under that framework, the plaintiff must first establish a prima facie case.  If the plaintiff succeeds in doing so, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  McDonnell Douglas, 411 U.S. at 802.  Finally, if the defendant carries its burden, the plaintiff must show that the reasons offered by the defendant were not its true reasons, but rather a pretext for discrimination.  Shaner, 204 F.3d at 500.


C.   Plaintiff's Prima Facie Case

The ADA makes it unlawful for an employer to discriminate against an employee on the basis of his disability. 42 U.S.C. § 12112(a).  The ADA defines disability to include being "regarded as" having a physical or mental impairment that substantially limits one or more major life activity.  Id. § 12102(2).  Mr. Zern brings claims for "regarded as" disability discrimination and retaliation under the ADA.[3]

---

[3] The plaintiff brings equivalent claims under the PHRA. The analysis for ADA and PHRA claims is essentially the same. Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002).

1.   "Regarded As" Disability Discrimination

In order to make out a prima facie case of
discrimination under the ADA, the plaintiff must establish that
he (1) has a disability within the meaning of the ADA or was
regarded as having a disability,[4] (2) is otherwise qualified to
perform the essential functions of the job, with or without
reasonable accommodations by the employer, and (3) has suffered
an adverse employment action as a result of discrimination.
Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000); Turner v.
Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006).
Pennoni disputes that Mr. Zern is a qualified individual because
Mr. Zern alleged and proved to an administrative law judge that
he could not perform his lab technician job.  MSJ 12-13.

---

[4] The plaintiff argues that the ADA Amendments Act of 2008
("ADAAA") should be considered.  The plaintiff was terminated on
April 1, 2008.  The ADAAA took effect on January 1, 2009.
See ADA Amendments Act of 2008, Pub. L. No. 110-325, § 8, 122
Stat. 3553, 3559 (2008).  The Third Circuit has held in an
unpublished opinion that the ADAAA is not retroactively
applicable.  See Britting v. Secretary, 409 F. App'x 566, 569 (3d
Cir. 2011); see also Colwell v. Rite Aid Corp., 602 F.3d 495, 501
(3d Cir. 2010) (declining to decide retroactivity of ADAAA but
noting that every court of appeals decision has held that the
amendments are not retroactive).
        This Court need not decide whether the ADAAA is
retroactively applicable to this case, however.  Even if the
ADAAA were applicable, the plaintiff has put forth no argument as
to how the ADAAA would change the analysis of his prima facie
case.  The ADAAA made it easier for plaintiffs to prove that they
are "disabled" within the meaning of the ADA, but the defendant
here does not dispute that Mr. Zern was disabled or regarded as
such.  Rather, the defendant argues that Mr. Zern was not
qualified for his position.  MSJ 12-13.

In Cleveland v. Policy Management System Corp., the
Supreme Court explained that the "pursuit, and receipt, of SSDI
benefits does not automatically estop the recipient from pursuing
an ADA claim.  Nor does the law erect a strong presumption
against the recipient's success under the ADA."  526 U.S. 795,
797-98 (1999).  Nevertheless, the Court held that "an ADA
plaintiff cannot simply ignore the apparent contradiction that
arises out of the earlier SSDI total disability claim.  Rather,
[he] must proffer a sufficient explanation." Id. at 806.  To
defeat summary judgment, that explanation "must be sufficient to
warrant a reasonable juror's concluding that, assuming the truth
of, or the plaintiff's good-faith belief in, the earlier
statement, the plaintiff could nonetheless 'perform the essential
functions' of her job, with or without 'reasonable
accommodation.'" Id. at 807.

The record shows that an ALJ ruled that Mr. Zern was
"unable to perform his past relevant work as a lab tech/chemist."
Zern Dep. Exh. 26 at 5.  The ALJ found Mr. Zern to have been
disabled, as defined in the Social Security Act, since April 1,
2008. Id. at 6.  The only explanation that Mr. Zern proffers for
the inconsistency between the ALJ decision and his current
assertion that he was qualified is that he did not apply for
disability benefits until January 7, 2009, nine months after he
was terminated by Pennoni.  Thus, he argues, a fact finder could

conclude that the onset of total disability began after his April 1, 2008 termination.  Opp. to MSJ 7.

The Court does not find Mr. Zern's temporal argument convincing, as the ALJ explicitly found Mr. Zern to have been disabled since April 1, 2008.  Granted, the ALJ considered other ailments of Mr. Zern's in addition to his diabetes, including "fasiculations in his calves, stenosis in his . . . spine, major depressive disorder, and anxiety disorder."  Zern Dep. Exh. 26 at 3.  Mr. Zern has put forth no evidence to indicate, however, that these additional ailments either arose after April 1, 2008 or that he was qualified to perform his job at Pennoni in spite of them.  In other words, he has not sufficiently explained the inconsistency.

The Court need not even decide whether Mr. Zern was "qualified" for his job, however.  As will be discussed below, Mr. Zern cannot overcome his burden to show that Pennoni's proffered non-discriminatory reasons for termination were pretextual.

### 2.   Retaliation for Requesting an Accommodation under the ADA

In order to establish a prima facie case of illegal retaliation under the ADA, a plaintiff must show (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity;

and (3) a causal connection between the employee's protected activity and the employer's adverse action.[5]  <u>Williams v. Philadelphia Housing Auth. Police Dept.</u>, 380 F.3d 751, 759 (3d Cir. 2004).

Mr. Zern claims that he engaged in protected conduct when he discussed an email dated March 12, 2008 (and addressed to himself) with Nelson Shaffer, a Pennoni Vice President, and that he was terminated just over two weeks later.  Opp. to MSJ 9. However, Mr. Zern does not explain how this discussion with Mr. Shaffer constituted protected activity under the ADA.  Mr. Zern's diabetes is only briefly mentioned in the March 12, 2008 email. After airing a litany of generalized grievances about his job, Mr. Zern writes, "I am working with a major disability, Type 1 Diabetes and have managed to not let it hurt my work."  Opp. to MSJ, Appendix, at 9.  But there is nothing in the email - and Mr. Zern points to nothing in the record - to indicate that he complained to Mr. Shaffer of unfair treatment based on his disability or perceived disability, or that he requested

---

[5] Unlike a claim for discrimination, an ADA retaliation claim does not require that the plaintiff show that he is "disabled" as defined by the ADA.  <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 188 (3d Cir. 2003).  A plaintiff alleging retaliation need only show that he had a "reasonable, good faith belief that [he] was entitled to request the reasonable accommodation [he] requested."  <u>Williams</u>, 380 F.3d at 759 n.2.

reasonable accommodation for his disability or perceived disability.

The content of the March 12, 2008 email indicates that Mr. Zern was merely airing general grievances about his job, not protesting disability discrimination or requesting a reasonable accommodation.  Mere passing reference to having a disability does not convert his complaints about his job into protected conduct for a prima facie case of retaliation.[6]  See Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir. 1995).  Furthermore, it is not disputed that Mr. Davis made the decision to terminate Mr. Zern's position, not Mr. Shaffer.  In short, there is no basis in the record for Mr. Zern's retaliation claim.

Finally, as with Mr. Zern's regarded-as discrimination claim, even if he had established a prima facie case for retaliation, he has not met his burden of showing pretext.

---

[6] Although Mr. Zern does not make this argument in his brief, at his deposition, Mr. Zern testified that he was retaliated against because he questioned lab practices and filed complaints and non-compliance reports with his boss.  Zern Dep. 343.  As an example, he cited the fact that he complained about the type of molds that Pennoni used for concrete cylinders.  Id. at 345.  These complaints about lab practices also do not constitute "protected conduct" under the ADA, as they are not complaints about disability discrimination.

14

D.   Defendant's Burden: Legitimate Non-Discriminatory
     Reason for Termination

Defendant Pennoni meets its burden of showing that there was a legitimate, non-discriminatory reason for Mr. Zern's termination.  Pennoni points to evidence that it terminated Mr. Zern because of his poor performance record, in addition to the declining profitability of the cement lab.


E.   Plaintiff's Burden: Pretext

Pennoni argues that even if Mr. Zern has presented a prima facie case of discrimination and retaliation under the ADA, he has not offered evidence raising a genuine factual dispute as to whether Pennoni's proffered non-discriminatory reasons for terminating him were pretextual.  The Court agrees.

To defeat a motion for summary judgment where a defendant has offered a legitimate, non-discriminatory reason for an adverse employment action, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  These are two ways by which the plaintiff can prove that the defendant's reasons were pretextual.

15

To discredit the employer's articulated reasons, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken." Id. at 765. "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence . . . . '" Id. (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir.1992)). Mr. Zern must show by a preponderance of the evidence "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Cred. Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997).

Alternatively, the plaintiff must "point to evidence with sufficient probative force for a factfinder" to make the conclusion that an invidious discriminatory reason was more likely than not a motivating factor for the termination. Simpson v. Kay Jewelers, 142 F.3d 639, 644-45 (3d Cir. 1998) (internal quotations omitted). One example of such evidence is more favorable treatment of other employees not exercising the same right. See id.

Mr. Zern has not met his burden to show pretext through either of these two tests. He argues that Pennoni's reasons for

termination were made up to fend off litigation, and that this conclusion is corroborated by "the fact that Zern's overall performance ratings in the years prior to his discharge were consistently very positive."  Opp. to MSJ 7.  The Court is unpersuaded by this assertion in light of the consistently negative comments in Mr. Zern's 2005-2007 performance evaluations.

Mr. Zern's affidavit states that he received pay increases each year until 2007, the year when Edward Sander drafted his review.  Affidavit of Plaintiff Guy F. Zern ("Zern Aff.") ¶ 4.  But Mr. Zern's affidavit alone does not suggest that Pennoni's proffered reasons for termination - including the declining profitability of the cement lab - are so plainly wrong that they cannot have been the employer's real reasons for termination.

In fact, Mr. Zern's own testimony seems to acknowledge that Pennoni's proffered reasons had a basis.  Mr. Zern testified that the reasons for his termination were "obvious": "job performance because of my reviews . . . [a]nd then lack of work, which is something that they were always saying, I didn't have enough work."  Zern Dep. 238.

Thus, even if Mr. Zern had established prima facie cases for regarded-as disability discrimination and retaliation,

he has not met his burden to show that Pennoni's proffered
reasons for his termination were pretextual.

An appropriate order follows separately.